Jon D. Graves, Legal Counsel, SC #10554
Hutchinson Correctional Facility
P.O. Box 1568
Hutchinson, KS 67504-1568
Telephone: (620) 625-7253
Jon.Graves@ks.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PATRICK E. MARTIN )<br>)<br>       Plaintiff, )<br>)<br>v. )<br>)<br>DAN SCHNURR, MISTY KROEKER, )<br>ELIZABETH ALLEN, JEREMY BELL )<br>       Defendants. )<br>_____) | Case No. 25-3049-JWL |

## REPORT IN "MARTINEZ v. AARON" INVESTIGATION

## CIVIL RIGHTS COMPLAINT

On May 23,, 2025, plaintiff Patrick E. Martin filed an amended civil rights action pursuant to 42 USC §1983 in the United States District Court for the District of Kansas. (Doc. 8) At all relevant times plaintiff was an inmate incarcerated in the custody of the Secretary of Corrections of the State of Kansas and, at the time his cause of action arose was housed at the Hutchinson Correctional Facility.

On June 18, 2025, the Court issued an order directing the preparation of a Martinez report. (Doc. 9)

1

## SUMMARY OF ALLEGATIONS IN PLAINTIFF'S PETITION

Plaintiff was an inmate housed at the Hutchinson Correctional Facility (HCF) on March 26, 2023, when plaintiff was attacked without provocation and stabbed multiple times by another inmate.(Doc. 8 p. 2)

Plaintiff names in his caption as defendants HCF warden Dan Schnurr, Jeremy Bell Major of Security, Deputy Warden Misty Kroeker and EAI investigator Elizabeth Allen. (Doc. 8 pp. 1, 3-4)

Plaintiff indicates that inmate Dawson Slater attacked plaintiff without provocation and stabbed plaintiff sixteen times in his upper back, left shoulder and right leg. Plaintiff states that his attacker had stabbed two other inmates in January and February of 2023. Plaintiff suggests that the defendants should have known that Dawson Slater (Slater) was a significant threat to the inmate population at HCF, yet both times defendants released Slater from segregation back into general population. (Doc. 8 pp.3, 5)

Plaintiff suggests that he tried several times to grieve the above complaint while housed at HCF and then later when he was transferred to the Ellsworth Correctional Facility. Plaintiff says his efforts were thwarted and obstructed each time he attempted to do so, but doesn't give any indication of when or how his efforts were thwarted or obstructed. (Doc. 8 p.5)

Defendant Schnurr is named in this action because of his duty to approve the release of inmates in segregation back into general population or to continue their placement in long term segregation for reason of continuous bad behavior or other security risk for violent and disruptive behavior. (Doc. 8 pp. 1-2)

Defendant Bell is the chief of security and is a member of the segregation review board who has a duty to decide whether to release a segregation inmate back into general population or to retain that inmate in segregation. (Doc. 8 pp. 3-4)

Defendant Kroeker is a deputy warden and a member of the segregation review board who has a duty to decide whether to release a segregation inmate back into general population or to retain that inmate in segregation. (Doc.8 p.4)

Defendant Elizabeth Allen is an EAI investigator and it a member of the segregation review board who has a duty to decide whether to release a segregation inmate back into general population or to retain that inmate in segregation. (Doc. 8 p. 4)

Plaintiff indicated that defendant Schnurr refused to place Slater into long term segregation after these two prior stabbings, leading to the unprovoked stabbing of plaintiff. (Doc. 8, pp. 6-7)

Plaintiff indicates that the acts of defendants Bell, Kroeker and Allen in approving the release of Slater back into general population after these two prior stabbings led to the unprovoked stabbing of plaintiff by Slater. (Doc. 8, p7)

Plaintiff maintains the above decisions of these defendants shows deliberate indifference toward plaintiff's safety so as to violate plaintiff's eighth amendment rights. (Doc. 8, p.6)

Plaintiff seeks judgment for compensatory damages against each defendant, jointly and severally, in the amount of $300,000 each and punitive damages of $100,000 against each defendant, jointly and severally. (Doc. 8, p. 9)

Plaintiff does not indicate whether he is suing defendants in their official or personal capacities, but does indicate that they were acting under color of law. (Doc.1 pp.1, 2, 3 and Doc. 11 p.1)

Plaintiff seeks a jury trial, recovery of his costs and other additional relief. (Doc. p.9)

On June 18, 2025, the Court initially reviewed plaintiff's petition and ordered a Martinez Report, subject to further screening by the Court after submission of the ordered report.( (Doc. 9)

## UNCONTROVERTED STATEMENT OF FACTS

### I.    INFORMATION ON PLAINTIFF

Plaintiff, Patrick E. Martin, KDOC #55537, is an inmate legally incarcerated in the custody of the Secretary of Corrections, State of Kansas, presently housed at the Ellsworth Correctional Facility.  Plaintiff has two active felony convictions.  Plaintiff is currently serving sentences for the convictions of second degree murder and aggravated endangering of a child, both committed in Greenwood County in 2012, resulting the beginning of his most recent incarceration on August 8, 2013, at the Reception and Diagnostic Unit at the El Dorado Correctional Facility.  He was transferred to HCF on September 12, 2013, and transferred to the Ellsworth Correctional Facility (ECF) on April 30, 2024.  Plaintiff's earliest release date from custody is July 14, 2054  (See Kasper Sheet Exhibit 1)

Plaintiff was sent a letter on July 31, 2025, seeking any additional statement he wished to offer and did not respond. (Exhibit 2)

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES AS TO GRIEVANCES AND PROPERTY CLAIMS

Before being transferred to ECF on April 30, 2024 plaintiff filed a property claim at HCF on April 3, 2024, seeking $204.93 in compensation for property taken from him when he entered restrictive housing at HCF March 26, 2023. After plaintiff was transferred to ECF he was given possession of the various items for which he sought compensation and realized none of his property was missing. Plaintiff withdrew his property claim May 20, 2024. (Exhibits 1, 8, 8A & 9)

On May 5, 2024, plaintiff submitted a Form 9 communication to his unit team person Mr. Smith. In that document he mentioned it was an "informal resolution", which was terminology involved with the first step of a grievance. But, plaintiff then asked for $50,000 and other remedies which are not available through the grievance process. The Form 9 was forwarded to HCF counsel on May 7, 2024, for a response. The response was prepared and returned to ECF staff the same day. (Exhibit 15 and attachments)

The response read as follows:

I am the facility attorney at the Hutchinson Correctional Facility. I was given your Form 9 for response since you are now housed at the Norton Correctional Facility.

You appear to be referencing a battery by another inmate on March 26, 2023, wherein you were attacked and injured. You now want to make a claim for money against someone.

Your claim should be routed through the claims process and not by way of a Form 9.

Your claim should be filed within 10 calendar days of the occurrence of the event. This is indicated in your inmate rule book at K.A.R. 44-16-104a. The claims process is more fully explained in Internal Management Policy and Procedure 01-118D, which repeats the 10 day time limit and includes a form to use in making the claim.

You are well over 13 months late in attempting to advance your claim and are using the wrong mechanism to do so.

>This letter will acknowledge your Form 9 as above described, and will respond that you are using an incorrect policy to file such a claim and are late in doing so. Your claim is denied for those reasons.

Exhibit 15 B)

Plaintiff then filed a second property claim at ECF for $50,000 on May 12, 2024, seeking compensation for injuries received in the battery committed on March 26, 2023. Four documents were attached to plaintiff's amended petition and are fairly described as follows:

The first page appears to be the Form 9 communication with the notation "Informal Resolution" dated May 5, 2024. This was responded to by HCF counsel as above noted. (Exhibit 9 A and Exhibit 15 A)

The next page is the personal injury claim form from Internal Management Policy and Procedure 01-118D. It was dated May 12, 2024, and asked for $50,000 for injuries relating to the attack by an inmate at the Hutchinson Correctional Facility on March 26, 2023. A notation from Staff indicates it was turned in by Martin on June 12, 2024. (Exhibit 9 B)

The next page appears to be a response to the property claim from Unit Team Manager S. Hoss dated August 5, 2024. The response indicates the claim is being returned to Martin because it was not filed within 10 days after the loss and also because the amount sought exceeded the $500 reimbursement limit. (Exhibit 9 C)

The last page appears to be a grievance about the March 26, 2023, attack on plaintiff at the Hutchinson Correctional Facility and is dated May 20, 2024. The page does not appear to have ever been submitted beyond the top of the form being filled out. (Exhibit 9 D)

The property claim (Exhibit 9 C) was initially sent to HCF for investigation because the basis for the claim occurred at HCF. The claim was received at HCF, was assigned a log number and investigated initially. Before being responded to on the merits, it was determined

that it instead was returned to ECF to be addressed. (Exhibits 5 & 8, 8A & 8B)

As noted above, at ECF the claim was rejected because it was filed beyond the 10 day limit set forth in Internal Management Policy and Procedure 01-118D. Plaintiff could have appealed that denial to the Secretary of Corrections, but did not do so. (Exhibits 8 and 9 C)

Plaintiff attached to his petition a grievance he says was submitted at ECF on May 20, 2024. There is no indication that it was ever received by staff and answered or processed. Whatever happened, assuming the grievance was initially denied, the Secretary of Corrections did not receive an appeal of any denial.(Exhibits 9 D & 10)

No other documents relating to exhausting any administrative remedy have been located. The property claim appears to have been finally denied on August 5, 2024, and the grievance does not appear to have ever been submitted. (Exhibits 9 C & 9 D)

Darcie Holthaus is the keeper of the record in the Topeka central office for the Kansas Department of Corrections and is also the designee who responds to property claims and grievance appeals on behalf of the Secretary of Corrections. She also receives and evaluates emergency grievances for further consideration. She did not find any property claim appeals, grievance appeals or emergency grievances from plaintiff regarding claims associated with him being battered by another inmate at the Hutchinson Correctional Facility on March 26, 2023. (Exhibit 10)

It does not appear that petitioner has exhausted any available administrative remedy.

### III.    THE MERITS OF PLAINTIFF'S CLAIMS

Defendant Jordan Bell is the major of security and has been employed with the Kansas Department of Corrections since 2011. Major Bell was the security representative on the Segregation Review Board at HCF between December 2023 and March 2024, the times during

7

which Dawson Slater (Slater), who attacked plaintiff on March 26, 2023, served short periods of disciplinary segregation. (Exhibit 6)

By way of explanation, the Segregation Review Board did not see Slater during that time nor would the board normally see an inmate who was serving a short period of disciplinary segregation as was the case with Slater. (Exhibit 6)

The three representatives on the Segregation review board appear on behalf of Security, Classification and Behavioral Health.  For the times Slater was serving disciplinary segregation sentences, Major Bell was present for Security, Jennifer Hertel was the unit team person representing Classification and two members of the contract healthcare provider were present on behalf of Behavioral Health. (Exhibit 6)

Slater  was part of a fight on December 4, 2022, involving multiple inmates.  Inmate Slater had a weapon.  He was sentenced to serve disciplinary segregation from December 4, to December 19, 2022, after which time he was released from segregation.  That was in accordance with policy in place at that time.  Slater did not appear before the Segregation Review Board because he was simply serving a disciplinary sentence. (Exhibits 6, 14, 21, 27)

On March 6, 2023, Slater was found with a weapon hidden in a leg of his desk in his cell. He was sentenced to five days of disciplinary segregation and 30 days restriction.  Part of serving restriction time involves wearing a yellow jumpsuit so he can be identified as on restriction. Again, Slater served his disciplinary segregation sentence and did not appear in front of the Segregation Review Board. Slater can be seen in the security video of the attack on March 26, 2023, wearing the yellow jumpsuit. (Exhibit 6, 16, 23)

Nothing about the disciplinary violations on December 4, 2022, nor on March 6, 2023, raised any concern that would have caused the board to consider whether to look more closely at

8

whether to hold Slater in a longer period of administrative segregation. He had already served his disciplinary segregation penalty and would have been transferred to administrative segregation were that deemed necessary. Slater remained in the same cell in B 1 cellhouse, cell 218, during that time and remained in maximum custody security level. (Exhibits 6 & 18)

The March 26, 2023, attack by Slater, attacking Martin from behind with a stabbing device and seriously injuring Martin, was different than the prior disciplinary offenses by Slater.

Until March 26, 2023, the offenses were not outside what sometimes happens in a prison. Slater was retained in segregation from March 26, 2023, forward and was proposed for long term segregation by the head of classifications at the Hutchinson Correctional Facility, which proposal was approved by the senior classifications person in central office in Topeka. That classification continues in place. (Exhibits 6, 24, 25, 26, 27)

What was different about how Slater was viewed after the attack was not only the violence of the attack on Martin, but also the discovery from Martin himself of the motive for the attack. Martin disclosed that he was wrongly believed to have been involved in providing information to convict another inmate, Scott Cheever, and that inmate, Michael Gaston, was involved ordering the attack through the involvement of Slater. Slater was then validated as a white supremist security threat group member and that new information contributed to the long term status Slater is now experiencing. Plaintiff was investigated as being a member of the white supremist security threat group in 2018 and Slater in 2020. Neither was validated at that time. (Exhibits 6, 19, 20, 28, 29)

A year later, plaintiff was again accused of providing information against a different inmate and was again attacked. Shortly after that event, plaintiff was transferred to ECF. (Exhibits 1, 28)

9

The decisions made by the Segregation Review Board involving inmate Slater were consistent with department policy at that time, although policies do change over time. (Exhibit 6)

Plaintiff remained in protective custody until April 17, 2023, at which time plaintiff requested to be released back into general population. (Exhibit 30)

The attack by Slater on plaintiff was investigated and documented in a variety of reports and most completely in case HCF-BA-23-5. (Exhibits 12, 13, 17, 18, 22, 31)

The HCF investigator Defendant Allan, now Aragon, prepared a full report on the battery of plaintiff by Dawson Slater including video of the battery and subsequent treatment, 19 photos, medical documents, an interview of Patrick Martin and an interview with Dawson Slater raising his right against self-incrimination and other supporting documents. The full report, including multiple videos, is too large to file electronically, so the Court will be requested to permit the record to be filed conventionally with the court on digital format and plaintiff will be given access to the complete report on a laptop to review. (Exhibit 31)

The warden, defendant Dan Schnurr, would not be involved with the Segregation Review Board decisions unless there was a disagreement between board members as to whether to release someone from or retain someone in administrative segregation. The warden was not involved in any decisions involving inmate Slater's segregation status. The referral for long term segregation status was an administrative process conducted by local classifications person and approved by a classification person in Topeka.(Exhibits 4, 6)

Defendant Deputy Warden Misti Kroeker was not on the Segregation Review Board and did not have any authority regarding such matters. Major Bell isn't sure whether Deputy Warden Kroeker ever sat in during a Segregation Review Board session on anything involving Slater and wouldn't have had any involvement with any decisions regarding his segregation status.

(Exhibits 5, 6)

Investigator Elizabeth Allan, now Aragon, similarly did not sit on the Segregation Review Board and had no say in Slater's classification in segregation. If an investigator sat in on a Segregation Review Board session, that would be that investigator's choice, possibly to gain intelligence from what was being said by inmates appearing before that board. (Exhibits 5, 6, 7)

## IV.  MEDICAL RECORD

Counsel has obtained plaintiff's medical record from January 1, 2023, to date. The total pages number over 1,600 pages. The record is too large to photocopy, so the Court will be requested to permit the record to be filed conventionally with the court on digital format and plaintiff will be given access to the record on a laptop to review. (Exhibit 11)

## V.  OTHER NON-AFFIDAVIT DOCUMENTARY EXHIBITS

Inmate data summary sheet for Dawson Slater #115104, who attacked plaintiff on March 26, 2023. (Exhibit 3)

Internal Management Policy and Procedure 20-104A contains the policy for Purpose of Administrative Restrictive Housing and Appropriate Placements (Exhibit 32)

Internal Management Policy and Procedure 20-105A contains the policy for Basic operations of Administrative Restrictive Housing. (Exhibit 33)

Internal Management Policy and Procedure 01-118A contains the policy for submitting a personal injury or property loss claim. (Exhibit 34)

Kansas Administrative Regulation 44-15-101 describes part of the grievance procedure. (Exhibit 35)

Kansas Administrative Regulation 44-15-101a describes part of the grievance procedure. (Exhibit 36)

Kansas Administrative Regulation 44-15-101b describes part of the grievance procedure. (Exhibit 37)

Kansas Administrative Regulation 44-15-102 describes part of the grievance procedure. (Exhibit 38)

Kansas Administrative Regulation 44-15-104 describes part of the grievance procedure. (Exhibit 39)

## **CONCLUSION**

Plaintiff does not appear to have exhausted his administrative remedies in a timely fashion, or at all. Plaintiff suggests in his petition that he was intimidated or prevented from doing so, but it appears that he was able to submit and withdraw a property claim and was also able to prepare an administrative claim for personal injury, but did not follow through on an appeal of a final order denying his claims. It does not appear that petitioner ever submitted or appealed a denial of a grievance.

Plaintiff named three defendants for activities taken by them as members of the Segregation Review Board and the fourth defendant as approving the actions of the first three. Plaintiff is simply in error of his facts. Defendants Kroeker and Allan (now Aragon) were not members of the three person Segregation Review Board and exercised no authority over the activities of the Board. Defendant Schnurr did not exercise any authority over the actions of the Board regarding Dawson Slater. Defendant Schnurr could have resolved a non-unanimous decision of the Board regarding an administrative segregation matter, but Slater, in December of 2022 and in early March of 2023, was just serving a disciplinary segregation sentence and was then automatically released from segregation. Defendant Bell was a member of the Segregation Review Board, but did not see Dawson Slater in that capacity because Slater was serving

disciplinary segregation on his disciplinary conviction sentences and was then automatically released from segregation both of the two times cited by plaintiff in his petition.

The allegations by plaintiff in his petition are not supported by any records or testimony established at this time. If the Court determines it has jurisdiction at all to hear the matter further, due to Plaintiff's failure to exhaust administrative remedies, the Court should consider further inquiry into the factual allegations of plaintiff before proceeding beyond screening.

                                            Respectfully submitted,

                                            /s/ Jon D. Graves
                                            Jon D. Graves #10554

### CERTIFICATE OF SERVICE

I hereby certify that on August 7th, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following: Matt Shoger, Assistant Attorney General, Memorial Bldg., 2nd Floor, 120 S.W. 10th Ave., Topeka, KS 66612-1597 and by mailing a copy to:

    Patrick M. Martin #55537
    Ellsworth Correctional Facility
    P.O. Box 107
    1607 State Street
    Ellsworth, Kansas 67439

                                            /s/ Jon D. Graves
                                            Jon D. Graves

### **EXHIBIT LIST**

1. Inmate Data Summary sheet for plaintiff Patrick E. Martin #55537
2. Additional Statement Letter dated July 31, 2025
3. Inmate Data Summary Sheet for Dawson Slater #115104
4. Affidavit of Dan Schnurr
5. Affidavit of Misti Kroeker
6. Affidavit of Jordan Bell
7. Affidavit of Elizabeth Allen

8. Affidavit of Carrie Worth
9. Affidavit of Terry Chaput
10. Affidavit of Darcie Holthaus
11. Plaintiff's full medical record from January 1, 2023 to date (filed under seal and conventionally on CD/Thumb drive, but will be provided to plaintiff on hard drive to review. There are reportedly over 1,600 pages.)
12. Incident Notification March 26, 2023
13. Use of Force Report March 26, 2023
14. Disciplinary Report 22-12-034
15. Affidavit of Jon Graves
16. Disciplinary Report 23-03-088
17. Disciplinary Report 23-03-313
18. Dawson Slater Disciplinary History December 2022 to April 2023
19. HCF Security Threat Group Validation 18-53 Patrick Martin
20. HCF Security Threat Group Validation 20-20 Dawson Slater
21. HCF Investigation Report BA-22-14 Battery by Dawson Slater and others 12/5/22
22. HCF Investigation Report BA-23-5 Battery by Dawson Slater on Patrick Martin 3/26/23
23. Administrative Restrictive Housing Report on Dawson Slater Beginning 3/6/23
24. Administrative Restrictive Housing Report on Dawson Slater Beginning 3/26/23
25. Daily Restrictive Housing Report on Dawson Slater Beginning 3/26/23 – 4/1/23
26. Administrative Segregation Review 4/14/23 – 2/12/25
27. Segregation Review Notes on Dawson Slater
28. Segregation Review Notes on Patrick Martin
29. Central Monitoring Case Review Prepared 4/5/23 Separating Patrick Martin from Dawson Slater, Scott Cheever and Michael Gaston
30. Release of Patrick Martin from Protective Custody 4/17/23
31. Complete Investigative File HCF-BA-23-5 into Battery of Patrick Martin by Dawson Slater. Report includes multiple videos of incident, 19 photos, medical documents, interviews of Patrick Martin and Dawson Slater and supporting information. (filed under seal and conventionally on CD/Thumb drive, but will be provided to plaintiff on hard drive to review)
32. Internal Management Policy and Procedure 20-104A
33. Internal Management Policy and Procedure 20-105A
34. Internal Management Policy and Procedure 01-118D
35. Kansas Administrative Regulation 44-15-101
36. Kansas Administrative Regulation 44-15-101a
37. Kansas Administrative Regulation 44-15-101b
38. Kansas Administrative Regulation 44-15-102
39. Kansas Administrative Regulation 44-15-104

/s/ Jon D. Graves                                                                      August 7, 2025
Jon D. Graves                                                                                    Date

Subscribed and sworn to before me this 7th day of August, 2025

                                                              /s/ Rhonda K. Severin
                                                                   Notary Public

My Commission Expires:  November 18, 2026