IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF KANSAS

PATRICK E. MARTIN,
    Plaintiff,

v.                                              Case No. 25-3049-JWL

DAN SCHNURR, et al.,
    Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

**I. Introduction**

Defendant's move to dismiss under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), alleging Plaintiff failed to exhaust administrative remedies. This argument fails because the grievance process was not "available" within the meaning of Ross v. Blake, 578 U.S. 632 (2016), due to: (1) Plaintiff's several stabbing injuries and resulted medical incapacitation; (2) facility's failure to advise or assist in initiating a personal injury claim; and (3) the fact that the facility had already gathered all required documentation under KDOC IMPP 01-118D(B)(1-5).

**II. Factual Background**

On March 26, 2023, Plaintiff was assualted and stabbed multiple times by Dawson Slater, a known habitual violent offender who had previously stabbed other residents and has been charged aon several occasions with either concealed weapon or dangerous contraband ("shanks"), on person and cell. The attack was unprovoked and carried out with a sharpened metal weapon--a deadly contraband item prohibited under facility rules. Some of these stab wounds affected his dominate arm and shoulder. Limiting mobility for a time. Plaintiff required medical hospital and infirmary care, spending approximately 5 days of the 10-day filing period under medical supervision, unable to access grievance forms or law library. Later Plaintiff would be moved to D-2 cellhouse and be attacked again - retrobution - and moved again to RHU. Facility failed to transfer Plaintiff knowing that attacker was part of a STG and its members are well known for continuos attacks on the same resident until the resident transfer or request LTS. This failure by the facility prohibited Plaintiff's ability to seek legal advice, assistance from law library, and completion of grievance forms. Please see attached "Plaintiff's Affidavit" for additional detail.

The Martinez Report (Doc. 10) confirms that the aggressor had a documented history of violent conduct between 2019-2023, even after the current incident was caught again at his new facility with a dangerous contraband. The resdient who attacked Plaintiff had a well-documented history of violent conduct (Doc. 10.3 and 10.27). Despite this, the Warden permitted a practice of downgrading and mischaracterizing such incidents, instead of accurately classifying these incidents as "assaults" with "dangerous contraband" or "deadly weapon", facility officials routinely downplayed them to lessor discipliary categories such as "fight or "battery" and even failed to place them in one or both of the (Doc. 10.3 or Doc. 10.27). This practice concealed the true nature and severity of the resident -  who attacked Plaintiff - conduct from official records, risk assessment, and housing decisions.

The deliberate downgrading of violent incidents is not an isolated clerical error, but a systemic practice that distorts institutional records, undermines safety protocols, and masks the true level of - resident-on-resident - violence. Thereby not being reported higher. This concealment is central to Plaintiff's claims and directly relevant to whether Defendant's acted with delieberate indifference under Farmer.

At no time did Plaintiff's Unit Team staff member visit or inquire whether Plaintiff wished to file a grievance or personal injury claim or provide the necessary forms. Unit Teams must omply with policy and basic human dignity, thereby must ensure that access to grievance procedures is not obstructed by medical isolation or incapacitation, that is: i.e., visit resident, discuss incident and policy and procedures, ask if accept or decline to file such procedures. Meanwhile, the facility's own investigative process - E.A.I. generated incident reports, medical records, and witness statements, per IMPP 01-118D(III)(B)(1-5). This type of investigation needed after a resident-on-resident attack, is identical to the documentation required for claims. (e.g. who, what, when, staff members names invovled and questions regarding incident).

### III. Legal Standard

The PLRA requires exhaustion of "available" administrative remedies. Woodford v. Ngo, 548 U.S. 81 (2006). In Ross, the Supreme Court held that remedies are not "available" when: (1) The process operates as a dead end; (2) The process is so opaque that it is incapable of use; or (3) Prison officials thwart residents from using it through misrepresentation, intimidation, or other misconduct.

### IV. Argument

A. The Remedy Was Unavailable Due to Medical Incapacity
1. Plaintiff's stabbing injuries and infirmary confinement rendered the grievance process physically inaccessible for a substantual potion of the 10-day period required by KAR 44-16-104a.
2. Courts have tolled deadlines where ingury prevented timely filing (Days v. Johnson, 322 F.3d 863 (5th Cir. 2003))

B. Facility Omission Constitutes Thwarting Under Ross
1. Staff failed to inform Plaintiff of the need to file a separate claim despite already compiling the necessary documentation.
2. This omission is analogous to Miller v. Norris, 247 F.3d 736 (8th Cir. 2001), where remedies were deemed unavailable because officials failed to provide grievance forms

C. Misclassification Practice Constitutes "Machination" and "Misrepresentation"
1. Staff deliberately downgraded prior stabbing incidents
2. Staff created a false record that minimized the resident who attacke Plaintiff violent history
3. This misrepresentation not only concealed the true risk but also obstructed Plaintiff's ability to obtain a meaningful administrative remedy
4. The grievance process cannot be considered "available" when the very facts necessary to substantiate the grievance are intentionally obscured

D. Equitable Estopple Bars Defendants From Asserting The Deadline
1. The facility's own condcut - failing to advise, failing to provide forms, failing to transfer Plaintiff right away causing Plaintiff to be assaulted again days later thereby refusing asscess to forms and law library, failure in downgrading serious violent incidents and already possessing the required evidence needed - caused the missed deadline

2. Under equitable estoppel, a party cannot benefit from its own misconduct or omission

E. Distinction Between Property and Personal Injury Supports Tolling
   1. Property claims can be filed immediately upon loss or within 15 days; personal injury claims require medical evaluation and documetation, making strick deadlines - 10-days - inherently more burdensome and inequitable
   2. No exceptions to IMPP 01-118D exists and therefore ambiguity exists within. Serious injuries that cut into the 10-day grace period must be assessed and tolled until resident is capable to comprehend and make meaningful articulations to the grievance forms

## V. Conclusion

Becuase the grievance process was unavailable, or alternatively because equitable tolling and estoppel apply, Plaintiff's §1983 claims should proceed. Defendant's motion to dismiss should be denied and the Court should grant the Plaintiff's prior motin for expansion of the Martinez Report.

Respectfully submitted,

Patrick Martin
PO Box 107
Ellsworth, Kansas 67439